UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 16-2671(DSD/KMM)

Berkley Risk Administrators
Company, LLC,

      Plaintiff,

v.                                                                    **ORDER**

Accident Fund Holdings, Inc.
d/b/a AF Group, Jenifer LeGro,
Tammy Rosati-Minarich, and
Stephanie Vaughan,

      Defendants.

    Thomas W. Carroll, Esq., Kathlyn E. Noecker, Esq., Jacqueline A. Mrachek, Esq. and Faegre Baker Daniels LLP, 90 South 7th Street, Suite 2200, Minneapolis, MN 55402, counsel for plaintiff.

    Daniel D. Quick, Esq. and Dickinson Wright PLLC, 38525 Woodward Avenue, Suite 2000, Bloomfield Hills, MI 48304; Keiko L. Sugisaka, Esq. and Maslon LLP, 90 South 7th Street, Suite 3300, Minneapolis, MN 55402 and Joseph J. LeBlanc, Esq. and LeBlanc Law and Mediation LLC, 222 South 9th Street, Suite 1600, Minneapolis, MN 55402, counsel for defendants.


This matter is before the court upon the motion for a temporary restraining order by plaintiff Berkley Risk Administrators Company. The court denied the motion from the bench with this written order to follow.


**BACKGROUND**

Plaintiff Berkley Risk Administrators Company (BRAC) is a national provider of at-risk and alternative-risk insurance program management services. A part of BRAC's business is administering

workers' compensation assigned-risk policies, which are state administered plans that provide workers' compensation coverage to employers unable to find coverage elsewhere. Compl. ¶¶ 12, 14. Because of varying state legal compliance requirements, the assigned-risk market can be complex. Id. ¶ 15.

States award contracts to insurance carriers through a competitive bidding process. Id. ¶ 21. Many states contract with the National Council on Compensation Insurance (NCCI) to administer and audit the bid process. In 2016, BRAC submitted bids to seven states, all of which contracted with NCCI to administer the bid process. Id. ¶¶ 22-24. The 2016 bid process ended in June, and contracts will be awarded in approximately late August. Id. ¶ 25. All seven states award three-year contracts. Id. ¶¶ 24-26.

Individual defendants Jennifer LeGro, Tammy Rosati Minarich, and Stephanie Vaughan, are former employees of BRAC and are currently employed by defendant, Accident Fund Holdings (AF Group). Id. ¶¶ 27-56. AF Group is one of the largest carriers of workers' compensation insurance and has recently decided to focus significant resources to enter the assigned-risk market. AF Group's Opp'n Mem. at 5.

LeGro, Minarich, and Vaughan decided to leave BRAC because of concerns raised by Berkley Net Underwriters, a sister company of BRAC, playing an increasingly active role in BRAC's assigned-risk operations. Id. at 9. LeGro received an offer of employment from

AF Group in late March. Compl. ¶ 33. She resigned on April 11 and continued to work at BRAC until April 22. Id. ¶ 33. Minarich and Vaughan both resigned on June 7. Id. ¶¶ 41, 48.

The parties do not dispute that before leaving BRAC, LeGro circulated a sample resignation letter to Vaughan and Minarich. Pl.'s Supp. Mem. at 15; AF Group's Opp'n Mem. at 11. It is also undisputed that the individual defendants emailed to their personal email addresses work related documents. Compl. ¶¶ 67-81; AF Group's Opp'n Mem. at 12-15. BRAC claims that these documents are trade secrets, and that defendants used these trade secrets in the assigned-risk market to gain an unfair advantage against BRAC, including in the 2016 NCCI bidding process. Compl. ¶ 59.

BRAC discovered that the individual defendants had emailed themselves the alleged trade secrets during an investigation that began in June. Belluscio Decl. ¶ 10. On August 8, BRAC filed a complaint alleging, among other causes of action: (1) misappropriation of trade secrets under 28 U.S.C. § 1836; (2) misappropriation of trade secrets under the Minnesota Uniform Trade Secrets Act (MUTSA), Minn. Stat. § 325C.01, et seq, and (3) breach of the duty of loyalty. See ECF. No. 1.

On August 9, BRAC filed this motion for a TRO, seeking to enjoin: (1) all defendants from using or disclosing the alleged trade secrets, (2) AF Group from employing LeGro, Minarich, and Vaughan in assigned-risk services, and (3) LeGro, Minarich, and

Vaughan from seeking employment in assigned-risk services with AF Group or any other entity. See ECF No. 9. The court denied the motion from the bench. In so ruling, the court relied on the four factors in Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981). The court provides further analysis for its decision here.

**DISCUSSION**

A TRO is an extraordinary equitable remedy, and the movant bears the burden of establishing its propriety. Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003). The purpose of a TRO is to "preserve the status quo until the merits [of the case] are determined." Dataphase, 640 F.2d at 113. The court will not grant a TRO in order to cure alleged past harms. In determining whether it should issue a TRO, the court considers: (1) the threat of irreparable harm to the movant in the absence of relief, (2) the balance between the harm to the movant in the absence of relief and the harm that the relief may cause the non-moving party, (3) the likelihood of the movant's ultimate success on the merits, and (4) the public interest. Id. at 114.

**A. Likelihood of Success on the Merits**

    **1. Misappropriation of Trade Secrets**

BRAC alleges defendants violated federal law and MUTSA by misappropriating trade secrets. Defendants deny that the documents

in question are trade secrets. The definition of "trade secret" in the federal statute and MUTSA are substantially similar. Compare 28 U.S.C. § 1839(3) with Minn. Stat. § 325C.01 Subd. 5. Therefore, the court will construe them as coextensive for purposes of this case.

The court is not persuaded that BRAC will likely prevail on its misappropriation claims because it is unconvinced, at this time, that the documents in question contain trade secrets.

A trade secret must meet three criteria: "(1) the information must not be generally known nor readily ascertainable; (2) the information must derive independent economic value from secrecy; [and] (3) the plaintiff must make reasonable efforts to maintain secrecy." Strategic Directions Grp., Inc. v. Bristol-Myers Squibb Co., 293 F.3d 1062, 1064-65 (8th Cir. 2002) (citation and internal quotation marks omitted).

There is a substantial question as to what extent the alleged secrets are generally known or readily ascertainable. Plaintiff acknowledges that some of the documents are compilations of publicly available information. Pl's Reply Mem. at 8. The documents labeled "New Jersey Enhancement Change Request," "New Business UAT Spreadsheet," and "IT Spreadsheet" contain publicly available rules and standards for assigned-risk services in New Jersey. LeGro Decl. ¶¶ 38-40. This weighs heavily against finding that those documents contain trade secrets. A compilation of

generally known or readily ascertainable information cannot constitute a trade secret. See Strategic Directions, 293 F.3d at 1065 ("[M]ere variation on widely used information cannot be trade secrets.") (citation and internal quotation marks omitted).

BRAC relies heavily on AvidAir Helicopter Supply, Inc. v. Rolls-Royce Corp., 663 F.3d 966 (8th Cir. 2011). In AvidAir, the Eighth Circuit held that "[t]he fact that information can be ultimately discerned by others - whether through independent investigation, accidental discovery, or reverse engineering - does not make it unprotectable." Id. at 973. A court, instead, should consider "whether the duplication of the information would require a substantial investment of time, effort, and energy." Id. BRAC argues that this standard has been met because defendants concede that recreating the New Business UAT Spreadsheet would be "tedious." Pl.'s Reply Mem. at 8.

The court is unpersuaded. BRAC leaves the court to guess at exactly how much time and resources are needed to create the documents in question. The court does not believe that a "tedious" task necessarily rises to the level of "substantial time, effort, and energy" required by AvidAir.

BRAC has also failed to establish that the compiled information "affords a competitive advantage and is not readily ascertainable." AvidAir, 663 F.3d at 972. BRAC has not yet shown how the documents in question organize publicly available

6

information in a non-obvious fashion. See <u>Penalty Kick Mgmt. Ltd v. Coca Cola Com.</u>, 318 F.3d 1284, 1291 (11th Cir. 2003) ("[E]ven if all the information is publicly available, a unique combination of that information, which adds value to the information, also may qualify as a trade secret.").

As to those documents that do not contain publicly available information, there are serious questions as to whether BRAC took reasonable efforts to maintain the secrecy of the information at issue.

BRAC states that the alleged trade secrets are subject to "restricted access, password protection, the steps outlined in the Code of Ethics and Business Conduct, [and] . . . contractual agreements." Pl.'s Supp. Mem. at 27-28. Three of the documents were also marked as confidential. See <u>id.</u> at 23-24, 27. BRAC explains that the password protection requires an employee entering a password to log into a work computer. Pl.'s Reply Mem. at 9-10. The court finds that there is a substantial question as to the sufficiency of these efforts.

Many of the efforts cited by BRAC have been found to be insufficient by other courts. For example, a contractual agreement to not use a company's property or proprietary information may not be sufficient. See <u>Electro-Craft Corp. v. Controlled Motion, Inc.</u>, 332 N.W.2d 890, 901-02 (Minn. 1983) (finding that the signing of a confidentiality agreement is "not enough"). Further, marking a

document "confidential" manifests an intent to maintain secrecy, but may not constitute a reasonable effort to do so. See Eutectic Welding Alloys Corp. v. West, 160 N.W. 2d 566, 570 (Minn. 1968) ("The mere fact that a confidential label is attached to information is not itself sufficient to elevate ordinary sales information to secretive stature."). Also, there is a strong argument that requiring employees to enter a password to access their computers is insufficient. The reasonable efforts required by the statute seem to apply to the specific information at issue, rather than all company information. See Minn. Stat. 325C.01 Subd. 5 ("'Trade secret' means information that . . . is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.") (emphasis added). BRAC has not shown how password protection specifically applied to the alleged trade secrets.

Finally, there is evidence indicating that BRAC's policies may have been routinely disregarded, which weighs against a finding that reasonable efforts were made to maintain secrecy. See Lexis-Nexis v. Beer, 41 F. Supp. 2d 950, 959 (D. Minn. 1999) (finding that polices which "were frequently disregarded in practice" raised a substantial question as to whether plaintiff made reasonable efforts to maintain secrecy). For example, defendants have presented evidence that employees routinely emailed work related documents to their personal email accounts. Minarich Decl. ¶ 22; Vaughan Decl. ¶ 7. Also, only three of the documents claimed to be

8

trade secrets were marked "confidential." This causes the court to question both the adequacy of BRAC's security protocol and whether BRAC is simply trying to claim trade secret status post hoc. Given the "contradictory nature of the evidence, the court cannot make a specific finding" concerning whether BRAC made reasonable efforts to maintain secrecy. Lexis-Nexis, 41 F. Supp. 2d at 959 (citation and internal quotation marks omitted). Therefore, the court is unable to find on the current record that BRAC will likely succeed on its misappropriation claims.

**2. Breach of the Duty of Loyalty**

BRAC also claims that the individual defendants breached their duty of loyalty to BRAC by misappropriating and disclosing BRAC's alleged trade secrets and by soliciting employees to leave BRAC. BRAC has not established that it is likely to succeed on this claim.

Under Minnesota law, an employee has a duty of loyalty that prohibits her from competing with her employer while employed. Rehab. Specialists, Inc. v. Koering, 404 N.W.2d 301, 304 (Minn. Ct. App. 1987). An employee may breach the duty of loyalty when she solicits business of the employer while still employed, discloses or misappropriates secret information, or engages in conduct such as embezzlement or referring customers to a competitor. Bellboy Import Corp. v. Banghart, No. A04-762, 2004 WL 2711052, at *2 (Minn. Ct. App. Nov. 30, 2004). Assuming that the documents in

9

question were confidential, BRAC has failed to submit persuasive evidence that individual defendants emailed themselves work related documents for the purpose of competing with BRAC, that they actually disclosed that information to AF Group or any other entity, or that they conspired to recruit BRAC employees. Therefore, BRAC has failed to show that it is likely to succeed on its breach of the duty of loyalty claim.

As a result, this factor weighs against granting a TRO.

**B. Irreparable Harm**

BRAC claims that in the absence of injunctive relief it will lose actual and potential customers and contract opportunities. BRAC also argues that it will lose its competitive advantage in the 2019 NCCI bidding process.

To show irreparable harm, a plaintiff must show that money damages will be inadequate. NewLeaf Designs, LLC v. BestBins Corp., 168 F. Supp. 2d 1039, 1045 (D. Minn. 2001) (citing Bloom v. O'Brien, 841 F. Supp. 277, 279 (D. Minn. 1993)). Further, a plaintiff cannot simply establish a risk of irreparable harm. There must be a "clear showing of immediate irreparable injury." Internet Inc. v. Tensar Polytechnologies, Inc., No. 05-CV-317, 2005 WL 2453170, at *5 (D. Minn. Oct. 3, 2005). BRAC has failed to meet this standard.

First, BRAC has not provided evidence that monetary damages would be inadequate. BRAC claims that it will lose customers and

contract opportunities, but these alleged harms, which sound in a claim for tortious interference with a business relationship or business expectancy, are commonly remedied through monetary damages. See Curtis v. Jennie-O Turkey Store, Inc., No. A10-50, 2010 WL 3546232 (Minn. Ct. App. Sept. 14, 2010) (noting that a plaintiff prove damages or pecuniary harm to establish a claim of tortious interference with prospective business relations or a contractual relationship).

Second, BRAC's claims that it will lose a competitive advantage because AF Group will use its trade secrets to bid against it in 2019 are too remote and speculative to show irreparable harm. Indeed, it is unclear whether BRAC will suffer any immediate harm, let alone future harm, given the lack of evidence that AF Group is in possession of BRAC's alleged trade secrets, used them in the 2016 bidding process, or will use them in the future. See Internet Inc., 2005 WL 2453170, at *5 (finding irreparable harm was not established where plaintiff had made "speculative allegations" of future harm and did not provide "convincing evidence" that the defendant had successfully entered the plaintiff's market).

Finally, although "the Court does not consider a delay [in bringing a TRO] dispositive," it will weigh against finding immediate, irreparable injury. Id. at *6. BRAC discovered that the individual defendants emailed the alleged trade secrets to

11

their personal email accounts in June, Belluscio Decl. ¶ 10, but did not bring this motion for a TRO until August 9. This delay, combined with the lack of convincing evidence noted above, weighs against finding irreparable harm to BRAC.

**C. Balance of Harms**

BRAC maintains that the harm it will suffer in the absence of an injunction is greater than the harm defendants will suffer if the court imposes an injunction.

The court disagrees. As noted above, it is doubtful whether BRAC will suffer any immediate or future harm for which monetary damages would be inadequate. BRAC seeks, however, to enjoin AF Group from employing the individual defendants in the assigned-risk market and to enjoin the individual defendants from seeking employment in that market. "Non-compete orders are not the appropriate remedy in response to a claim of misappropriation." WEG Elec. Corp. at *4 (citing Int'l Bus. Mach. Corp. v. Seagate Tech., Inc., 941 F. Supp. 98, 101 (D. Minn. 1992)) ("A claim of trade secret misappropriation should not act as an ex post facto covenant not to compete.").

Because BRAC seeks to deprive the individual defendants of seeking employment in an area to which they have devoted most of their careers, the court finds that the balance of harms weighs against granting a TRO.

**D. Public Interest**

Public interest favors both BRAC and defendants. On one hand, "[p]ublic interest favors the protection of legitimate business interests and the discouragement of unfair competition," which weighs in BRAC's favor. Equus Comput. Sys. v. N. Comp. Sys., No. 01-CV-657, 2002 WL 1634334, at *4 (D. Minn. July 22, 2002). Similarly, "[e]nforcing valid contracts and preventing the unauthorized use and disclosure of trade secrets and confidential information always serve the public interest." Breton S.p.A. v. Cambria Co., No. 05-CV-2634, 2006 WL 314497, at *4 (D. Minn. Feb. 9, 2006). However, as noted, there is also a public interest in permitting individuals to "labor in any occupation in which he is fit to engage." Katch, LLC v. Sweester, 143 F. Supp. 3d 854, 876 (D. Minn. 2015) (citation and internal quotation marks omitted) This factor is therefore neutral and does not affect the court's decision.

**D. Status Quo**

Finally, the court is unconvinced that BRAC's motion, if granted, would maintain the status quo. Rather, the TRO seeks to alter the status quo by requiring AF Group to either fire or re-assign employees who have already commenced their employment. Granting a TRO, then, would only serve to remedy alleged past grievances rather than "preserve the status quo." Dataphase, 640 F.2d at 844.

**CONCLUSION**

Accordingly, based on the above and as stated at the hearing, **IT IS HEARBY ORDERED** that plaintiff's motion for a temporary restraining order [ECF No. 7] is denied.

Dated: August 24, 2016

                                          <u>s/David S. Doty</u>
                                          David S. Doty, Judge
                                          United States District Court